**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Tatyna Petrosov |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the : Eastern | District of Pennsylvania (State) |
| Case number | 19-16061-AMC |

Official Form 410S1

# Notice of Mortgage Payment Change    12/15

**If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due. See Bankruptcy Rule 3002.1.**

| | | | |
|---|---|---|---|
| **Name of creditor:** | THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CWALT INC. ALTERNATIVE LOAN TRUST 2005-59, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2005-59 | **Court claim no.** (if known): | 6-1 |
| **Last four digits** of any number you use to identify the debtor's account: | XXXXXX6940 | **Date of payment change:** Must be at least 21 days after date of this notice | 10/1/2020 |
| | | **New total payment:** Principal, interest, and escrow, if any | $898.99 |

| Part 1: | Escrow Account Payment Adjustment |
|---|---|

1. **Will there be a change in the debtor's escrow account payment?**

   ☒ No
   ☐ Yes.  Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law.  Describe the basis for the change.  If a statement is not attached, explain why: _____
   _____

   Current escrow payment:    $ _____          New escrow payment :    $ _____

| Part 2: | Mortgage Payment Adjustment |
|---|---|

2. **Will the debtor's principal and interest payment change based on an adjustment to the interest rate in the debtor's variable-rate note?**

   ☐ No
   ☒ Yes  Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law.  If a notice is not attached, explain why: _____

   | | | | |
   |---|---|---|---|
   | Current interest rate: | 5.125% | New interest rate: | 3.75% |
   | Current principal and interest payment: | $ 806.26 | New principal and interest payment: | $ 731.77 |

| Part 3: | Other Payment Change |
|---|---|

3. **Will there be a change in the debtor's mortgage payment for a reason not listed above?**

   ☒ No
   ☐ Yes.  Attach a copy of any documents describing the basis for the change, such as repayment plan or loan modification agreement.
        *(Court approval may be required before the payment change can take effect.)*

   Reason for change: _____

   Current mortgage payment:    $ _____          New mortgage payment:    $ _____

Debtor 1 **Tatyna Petrosov** Case number *(if known)* 19-16061-AMC
First Name   Middle Name   Last Name

| **Part 4:** | **Sign Here** |

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

- ☐ I am the creditor.
- ☒ I am the creditor's authorized agent

**I declare under penalty of perjury that the information provided in this Notice is true and correct to the best of my knowledge, information, and reasonable belief.**

X   /s/Karen A. Maxcy                         Date   8/27/2020
    Signature

Print:   Karen         A.              Maxcy            Title   Authorized Agent for Creditor
         First Name    Middle Name     Last Name

Company   McCalla Raymer Leibert Pierce, LLC

Address   1544 Old Alabama Road
          Number    Street
          Roswell              GA            30076
          City                 State         ZIP Code

Contact phone   678-321-6965                  Email   Karen.Maxcy@mccalla.com

Official Form 410S1            Notice of Mortgage Payment Change            page 2

|  |  |
|---|---|
| In Re:<br>    Tatyna Petrosov | Bankruptcy Case No.: 19-16061-AMC<br>Chapter: 13<br>Judge: Ashely M. Chan |

## CERTIFICATE OF SERVICE

I, Karen A. Maxcy, of McCalla Raymer Leibert Pierce, LLC, 1544 Old Alabama Road, Roswell, GA 30076, certify:

That I am, and at all times hereinafter mentioned, was more than 18 years of age;

That on the date below, I caused to be served a copy of the within NOTICE OF MORTGAGE PAYMENT CHANGE filed in this bankruptcy matter on the following parties at the addresses shown, by regular United States Mail, with proper postage affixed, unless another manner of service is expressly indicated:

Tatyna Petrosov
751 Magee Avenue
Philadelphia, PA 19111

BRADLY E ALLEN                              *(served via ECF Notification)*
Law Offices of Bradly Allen
7711 Castor Avenue
Philadelphia, PA 19152

Scott F. Waterman, Trustee               *(served via ECF Notification)*
2901 St. Lawrence Ave.
Suite 100
Reading, PA 19606

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on:   9/2/2020   By:   */s/Karen A. Maxcy*
              (date)             Karen A. Maxcy
                                     Authorized Agent for Creditor

Loan No ▓▓▓▓▓▓▓

# LOST NOTE AFFIDAVIT

STATE OF UTAH)
                    ) ss:
COUNTY OF SALT LAKE )

**BRENT BONHAM**, being duly sworn, deposes and says that:

1. He is a VICE PRESIDENT of Select Portfolio Servicing, Inc. (the "Company") and has personal knowledge of the facts set out in this Affidavit.

2. Upon information and belief, on **08/16/2005**, **TANYA PETROSOVA DMITRY KOZLOV** (the "Borrower"), executed and delivered a promissory note (the "Note") in the principal amount of **$135,000.00** which Note is secured by a mortgage or deed of trust (the "Mortgage") on the real property and improvements located at **1569 STEVENS ST, PHILADELPHIA, PA 19149-3310** and which was duly recorded on **08/27/2005** as Instrument/Document: **51253782** in City of **Philadelphia**, a copy of which is attached hereto.

3. The Company services the Mortgage and Note for BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE ALTERNATIVE LOAN TRUST 2005-59, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-59 (the "Noteholder") with Select Portfolio Servicing, Inc. as attorney in fact the successor in interest to the original holder of the Note, the current owner of the Note.

4. Though it has conducted a diligent search of the records and files maintained in connection with the Mortgage, the Company has been unable to locate the Note and believes that the Note has been lost, misfiled, misplaced, or destroyed.

5. Upon information and belief, the Noteholder was the owner of the Note when the loss of possession occurred and was entitled to enforce the Note at that time.

6. The records of the Company do not show that the Note was ever released, paid off, satisfied, assigned, transferred, pledged, hypothecated or that the Note was otherwise disposed of by the Company.

7. The Company is aware that the successors in interest, assigns and/or transferees of the original holder of the Note (collectively, the "Owner") may rely upon the statements made in this Affidavit as to the Note having been lost, mislaid, misfiled or destroyed and never having been released, paid off, satisfied, assigned, transferred, pledged, hypothecated or otherwise disposed of by the Company.

8. If the Company should ever locate the Note, the Company agrees to provide the Note to the owner of record of the Property at that time.

LOST NOTE AFFIDAVIT Page 2 of 3

9. The Company hereby agrees to indemnify and hold the Borrower harmless from and against any and all losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based upon, or resulting from the Company's breach of any covenant, representation or warranty contained in this Affidavit.

END OF AFFIDAVIT
ONE SIGNATURE PAGE FOLLOWS

IN WITNESS WHEREOF, the undersigned has executed this instrument on **OCT 2 0 2015**, on behalf of the Company, as attorney in fact for BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE ALTERNATIVE LOAN TRUST 2005-59, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-59, with Select Portfolio Servicing, Inc. as attorney in fact.

By: _____
BRENT BONHAM, VICE PRESIDENT

[SELECT PORTFOLIO SERVICING, INC. Corporate 1989 SEAL UTAH]

LOST NOTE AFFIDAVIT Page 3 of 3

STATE OF UTAH
COUNTY OF SALT LAKE

On **OCT 2 0 2015**, before me, **N Benincosa**, a Notary Public in and for SALT LAKE in the State of UTAH, personally appeared BRENT BONHAM, VICE PRESIDENT of Select Portfolio Servicing, Inc., signing on behalf of BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE ALTERNATIVE LOAN TRUST 2005-59, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-59, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Notary Expires: 9/13/2018

N BENINCOSA
Notary Public State of Utah
My Commission Expires on:
September 13, 2018
Comm. Number: 678879

(This area for notarial seal)

Prepared by: CHASTIDY BLACKWELL

LOAN #: ▮▮▮▮▮▮▮

# ADJUSTABLE RATE NOTE
(MTA - Twelve Month Average Index - Payment Caps)

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.

| AUGUST 16, 2005 | FEASTERVILLE | PENNSYLVANIA |
|---|---|---|
| [Date] | [City] | [State] |

1569 STEVENS ST, PHILADELPHIA, PA 19149-3310
[Property Address]

1. **BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 135,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed 115 percent of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is AMERICA'S WHOLESALE LENDER
I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**
(A) Interest Rate
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 1.375 %. The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

(B) Interest Rate Change Dates
The interest rate I will pay may change on the first day of OCTOBER, 2005, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

(C) Index
Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(D) Calculation of Interest Rate Changes
Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO & 725/1000 percentage point(s) 2.725 ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than 9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

3. **PAYMENTS**
(A) Time and Place of Payments
I will make a payment every month.
I will make my monthly payments on the first day of each month beginning on OCTOBER 01, 2005. I will make these payments every month until I have paid all the Principal and interest and any

● PayOption ARM Note - MTA Index
2E306-XX (12/04)(d)
Page 1 of 4

LOAN #: ▮▮▮▮

other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on SEPTEMBER 01, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 457.86, unless adjusted under Section 3(F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the first day of OCTOBER, 2006, and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options;

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

● PayOption ARM Note - MTA Index
2E306-XX (12/04)                                    Page 2 of 4

LOAN #:

These Payment Options are only applicable if they are greater than the Minimum Payment.

4. **NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000  % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

8. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

● PayOption ARM Note - MTA Index
2E306-XX (12/04)                                    Page 3 of 4

LOAN #: ▮▮▮▮

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

_/s/ Tanya Petrosova/_  
TANYA PETROSOVA — Borrower

_/s/ Dmitry Kozlov/_  
DMITRY KOZLOV — Borrower

_____ — Borrower

_____ — Borrower

PayOption ARM Note - MTA Index  
2E306-XX (12/04)                Page 4 of 4

Prepared by: CHASTIDY BLACKWELL

**AMERICA'S WHOLESALE LENDER**

DATE: 08/15/2005
BORROWER: TANYA PETROSOV
CASE #:
LOAN #:
PROPERTY ADDRESS: 1569 STEVENS ST
PHILADELPHIA, PA 19149-3310

Branch #:
1210 NORTHBROOK DR. #300
TREVOSE, PA 19053
Phone: (215)322-3700
Br Fax No.: (N)

## PREPAYMENT PENALTY ADDENDUM

THIS PREPAYMENT PENALTY ADDENDUM is dated AUGUST 16, 2005, and is incorporated into and amends and supplements the Note of the same date (the "Note") given by me to AMERICA'S WHOLESALE LENDER
(the "Lender"). The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

The section of the Note entitled "Borrower's Right to Prepay" is replaced with the following new section:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note. If I make a Partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment.

If within the first THIRTY SIX months after the execution of this Note, I make prepayment(s), the total of which exceeds twenty (20) percent of the original Principal amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) during the twelve (12) month period immediately preceding the date of the prepayment exceeds twenty (20) percent of the original Principal amount of this Note. Interest will be calculated using the rate in effect at the time of prepayment.

● Multistate Prepayment Penalty Addendum
1E296-XX (01/05)(d)

Page 1 of 2

All other terms and conditions of the above referenced Note remain in full force and effect.

_TANYA PETROS_____

TANYA PETROSOVA _____ Borrower

_____ Borrower
DMITRY KOZLOV

_____ Borrower

_____ Borrower